## CONCLUSION

We conclude that the evidence was sufficient to support Hansen's conviction for aiding the consummation of a felony. By purchasing household goods for Torres as compensation for the arson, Hansen intentionally aided Torres in enjoying the returns or proceeds from his commission of the crime. Therefore, we reverse the judgment of the Court of Appeals and remand the cause with directions to affirm the conviction.

Reversed and remanded with directions.

———————

Pamela A. Manon et al., as Successors in Interest to Judy A. White, deceased, and William E. Waechter, appellants, v. Peggy J. Orr et al., appellees.

___ N.W.2d ___

Filed November 14, 2014.    No. S-13-1010.

1. **Motions to Dismiss: Appeal and Error.** A district court's grant of a motion to dismiss is reviewed de novo.
2. **Motions to Dismiss: Pleadings: Appeal and Error.** When reviewing an order dismissing a complaint, the appellate court accepts as true all facts which are well pled and the proper and reasonable inferences of law and fact which may be drawn therefrom, but not the plaintiff's conclusion.
3. **Statutes: Appeal and Error.** To the extent an appeal calls for statutory interpretation or presents questions of law, an appellate court must reach an independent conclusion irrespective of the determination made by the court below.
4. **Actions: Parties.** Neb. Rev. Stat. § 25-301 (Reissue 2008) provides that every action shall be prosecuted in the name of the real party in interest.
5. ____: ____. The purpose of Neb. Rev. Stat. § 25-301 (Reissue 2008) is to prevent the prosecution of actions by persons who have no right, title, or interest in the cause.
6. **Actions: Parties: Public Policy.** Neb. Rev. Stat. § 25-301 (Reissue 2008) discourages harassing litigation and keeps litigation within certain bounds in the interest of sound public policy.
7. **Actions: Parties: Standing.** The focus of the real party in interest inquiry is whether the party has standing to sue due to some real interest in the cause of action, or a legal or equitable right, title, or interest in the subject matter of the controversy.
8. ____: ____: ____. The purpose of the real party in interest inquiry is to determine whether the party has a legally protectable interest or right in the controversy that would benefit by the relief to be granted.

9. **Statutes.** Absent a statutory indication to the contrary, words in a statute will be given their ordinary meaning.
10. **Statutes: Legislature: Public Policy.** It is the function of the Legislature, through the enactment of statutes, to declare what is the law and public policy of this state.
11. **Statutes: Legislature: Appeal and Error.** Where the language of a statute is clear and unambiguous, it is not the province of an appellate court to disturb the balance framed by the Legislature.

Appeal from the District Court for Lincoln County: RICHARD A. BIRCH, Judge. Affirmed.

William J. Erickson and George E. Clough for appellants.

Timothy P. Brouillette, of Brouillette, Dugan & Troshynski, P.C., L.L.O., for appellees.

HEAVICAN, C.J., WRIGHT, CONNOLLY, STEPHAN, McCORMACK, MILLER-LERMAN, and CASSEL, JJ.

HEAVICAN, C.J.

## INTRODUCTION

The district court for Lincoln County dismissed for lack of standing the amended complaint of Pamela A. Manon, Amy M. White, Brian E. Krzykowski, Jill A. Krzykowski, and William E. Waechter (plaintiffs). Plaintiffs appeal. We affirm.

## FACTUAL BACKGROUND

Virginia M. Waechter is the mother of Judy A. White, William, and Peggy J. Orr. Virginia was the settlor of the Virginia M. Waechter Revocable Trust. Prior to November 11, 2012, Virginia was the trustee of the trust; since that date, First National Bank of North Platte has served as trustee.

At issue are certain parcels of land included in the corpus of the trust. In late 2010, these parcels were sold by Virginia as trustee of the trust to Peggy and her husband, Jeff C. Orr. Plaintiffs objected to the sale of this land. They filed a complaint on April 15, 2013, and an amended complaint on July 25, asking that a constructive trust be placed on the real estate, alleging that Virginia was not competent to sell the land to Peggy and Jeff and that the sale showed indications of fraud.

On August 1, 2013, Peggy and Jeff filed a motion to dismiss the amended complaint under Neb. Ct. R. Pldg. § 6-1112(b)(6) for failure to state a claim upon which relief could be granted. Following a hearing, that motion was granted. In dismissing, the court reasoned that under Neb. Rev. Stat. § 30-3855(a) (Reissue 2008), the duties of the trustee to the trust are owed to Virginia as the still-living settlor of the trust, and that the rights of the beneficiaries are subject to Virginia's control. As such, those beneficiaries could have no standing. The court also declined to adopt a cause of action for intentional interference with an inheritance or gift.

Plaintiffs appeal.

## ASSIGNMENTS OF ERROR

On appeal, plaintiffs assign, restated and consolidated, that the district court erred in (1) finding they lacked standing and (2) finding that § 30-3855(a) bars a cause of action for intentional interference with an inheritance or gift.

## STANDARD OF REVIEW

[1,2] A district court's grant of a motion to dismiss is reviewed de novo.[1] When reviewing an order dismissing a complaint, the appellate court accepts as true all facts which are well pled and the proper and reasonable inferences of law and fact which may be drawn therefrom, but not the plaintiff's conclusion.[2]

[3] To the extent an appeal calls for statutory interpretation or presents questions of law, an appellate court must reach an independent conclusion irrespective of the determination made by the court below.[3]

## ANALYSIS

*Standing.*

In its first assignment of error, plaintiffs assign that the district court erred in finding they lacked standing to bring this

---

[1] *Bruno v. Metropolitan Utilities Dist.*, 287 Neb. 551, 844 N.W.2d 50 (2014).

[2] *Id.*

[3] *Id.*

action. The district court, relying upon § 30-3855(a), concluded that plaintiffs had no right as beneficiaries of Virginia's revocable trust and that Virginia's alleged incapacity did not change that result.

On appeal, plaintiffs contend that contrary to the district court's finding, Virginia's incapacity was relevant to their standing, essentially arguing that Virginia's incapacity altered the trust from one that was revocable to one that was irrevocable. Plaintiffs further assert that principles of public policy suggest they should be found to have standing.

[4-8] Neb. Rev. Stat. § 25-301 (Reissue 2008) provides that "[e]very action shall be prosecuted in the name of the real party in interest . . . ." The purpose of § 25-301 is to prevent the prosecution of actions by persons who have no right, title, or interest in the cause.[4] Section 25-301 also discourages harassing litigation and keeps litigation within certain bounds in the interest of sound public policy.[5] The focus of the real party in interest inquiry is whether the party has standing to sue due to some real interest in the cause of action, or a legal or equitable right, title, or interest in the subject matter of the controversy.[6] The purpose of the inquiry is to determine whether the party has a legally protectable interest or right in the controversy that would benefit by the relief to be granted.[7]

This case presents the question of whether plaintiffs can show they are real parties in interest, given the provisions of § 30-3855. Section 30-3855(a) provides that "[w]hile a trust is revocable, rights of the beneficiaries are subject to the control of, and the duties of the trustee are owed exclusively to, the settlor."

[9] Absent a statutory indication to the contrary, words in a statute will be given their ordinary meaning.[8] And § 30-3855(a)

---

[4] *Countryside Co-op v. Harry A. Koch Co.*, 280 Neb. 795, 790 N.W.2d 873 (2010).

[5] *Id.*

[6] *Id.*

[7] *Id.*

[8] *Caniglia v. Caniglia*, 285 Neb. 930, 830 N.W.2d 207 (2013).

clearly provides that where the trust is revocable, as is the trust in this case, the settlor is in control of the trust. The plain language of this statute suggests that the only real party in interest in a case involving a revocable trust would be the settlor of that trust, or perhaps one that represents the settlor's interests, for example, a court,[9] a guardian or conservator,[10] or a next friend.[11] But plaintiffs here are contingent beneficiaries of the trust and have no real interest in the cause of action or a legal or equitable right, title, or interest in the subject matter of the controversy. This result is supported by our case law, which provides that a mere expectancy is insufficient to entitle a prospective heir to bring an action to recover property.[12]

Nor is this result affected by Virginia's alleged incapacity. There is nothing in the plain language of § 30-3855(a), nor do the parties direct us to any other authority, which would suggest that the revocable status of a trust is affected by the settlor's alleged incapacity.

These results are further supported by an examination of the legislative history of § 30-3855(a). Prior to 2005, § 30-3855(a) (Cum. Supp. 2004) provided in part that

[w]hile a trust is revocable and the settlor has capacity to revoke the trust, rights of the beneficiaries are subject to the control of, and the duties of the trustee are owed exclusively to, the settlor. A settlor's power to revoke the trust is not terminated by the settlor's incapacity.

The language of § 30-3855 was part of the Uniform Trust Code § 603. But a comment to the 2004 amendment to § 603 was added by the drafters of the Uniform Trust Code, explaining that the phrase "and the settlor has capacity to revoke the trust" was now optional language:

Section 603 generally provides that while a trust is revocable, all rights that the trust's beneficiaries would

---

[9] Neb. Rev. Stat. § 30-2637 (Reissue 2008).

[10] See Neb. Rev. Stat. §§ 30-2620 (Cum. Supp. 2012), 30-2628 (Supp. 2013), and 30-2653 (Reissue 2008).

[11] See *Dafoe v. Dafoe*, 160 Neb. 145, 69 N.W.2d 700 (1955).

[12] *Id.*

otherwise possess are subject to the control of the settlor. This section, however, negates the settlor's control if the settlor is incapacitated. In such case, the beneficiaries are entitled to assert all rights provided to them under the Code, including the right to information concerning the trust.

Two issues have arisen concerning this incapacity limitation. First, because determining when a settlor is incapacitated is not always clear, concern has been expressed that it will often be difficult in a particular case to determine whether the settlor has become incapacitated and the settlor's control of the beneficiary's rights have ceased. Second, concern has been expressed that this section prescribes a different rule for revocable trusts than for wills and that the rules for both should instead be the same. In the case of a will, the devisees have no right to know of the dispositions made in their favor until the testator's death, whether or not the testator is incapacitated. Under Section 603, however, the remainder beneficiary's right to know commences on the settlor's incapacity.

Concluding that uniformity among the states on this issue is not essential, the drafting committee has decided to place the reference to the settlor's incapacity in Section 603(a) in brackets. Enacting jurisdictions are free to strike the incapacity limitation or to provide a more precise definition of when a settlor is incapacitated . . . .[13]

In 2005, the Nebraska Legislature revised § 30-3855(a) to the version in effect today. In making such an amendment to § 30-3855, it was explained that the change was done to

reaffirm that the duties of a trustee of a revocable trust are owed exclusively to the settlor. These amendments would repeal the language now bracketed in the official [National Conference of Commissioners on Uniform State Laws] text. The rights of the beneficiaries of the revocable trust whose settlor becomes incompetent would

---

[13] Unif. Trust Code § 603, comment, 7C U.L.A. 554 (2006).

be comparable to the rights of devisees under a will of a testator who becomes incompetent. A settlor's power to revoke the trust would not be terminated by the settlor's incapacity, although the incapacity may affect the settlor's legal ability to exercise the power.[14]

This history shows that incapacity does not terminate a settlor's power to revoke a trust, though it might well affect the ability of the settlor to exercise that power. And because it does not affect the power to revoke a trust, that trust remains revocable until revoked, either by the settlor, or by another acting in the settlor's stead.[15]

[10,11] Nor are we persuaded that public policy requires these plaintiffs to have standing. Indeed, it is the "function of the Legislature, through the enactment of statutes, to declare what is the law and public policy of this state."[16] The language of § 30-3855 (Reissue 2008) is clear and unambiguous, and it is not our province to disturb the balance framed by the Legislature.[17]

Plaintiffs lack standing to impose the constructive trust they seek, because under case law and § 30-3855(a), they have only a mere expectancy. Virginia's alleged incapacity does not change this result, because any incapacity would not affect the status of the trust as revocable. Plaintiffs' first assignment of error is without merit.

*Intentional Interference With Inheritance or Gift.*

In its second assignment of error, plaintiffs assign that the district court erred in concluding that § 30-3855(a) prevents the recognition of the cause of action for intentional interference with an inheritance or gift. That cause of action, from the

---

[14] Floor Debate, L.B. 533, 99th Leg., 1st Sess. 1006-07 (Feb. 15, 2005).

[15] Cf. §§ 30-2628 and 30-2637. See, also, *In re Guardianship & Conservatorship of Garcia*, 262 Neb. 205, 631 N.W.2d 464 (2001).

[16] *Holdsworth v. Greenwood Farmers Co-op*, 286 Neb. 49, 59, 835 N.W.2d 30, 37-38 (2013).

[17] See *id.*

Restatement (Second) of Torts,[18] provides: "One who by fraud, duress or other tortious means intentionally prevents another from receiving from a third person an inheritance or gift that he would otherwise have received is subject to liability to the other for loss of the inheritance or gift."

We expressly decline to opine on the interplay between § 30-3855(a) and § 774B of the Restatement. Even if we were to conclude that the statute did not prevent the adoption of a cause of action for intentional interference with an inheritance or gift, we would nevertheless decline to adopt this tort. Plaintiffs' second assignment of error is without merit.

*First National Bank as Party.*

For the sake of completeness, we note that in the last section of the brief for the appellees, they suggest that First National Bank of North Platte should be dismissed as a defendant because it has no interest in this suit. But because no cross-appeal was filed on this issue, we do not address the argument further.[19]

## CONCLUSION

The decision of the district court is affirmed.

AFFIRMED.

---

[18] Restatement (Second) of Torts § 774B at 58 (1979).

[19] Neb. Ct. R. § 2-109(D)(4) (rev. 2014).

---

JASON GAVER, APPELLEE, v. SCHNEIDER'S
O.K. TIRE CO., APPELLANT.
___ N.W.2d ___

Filed November 14, 2014.    No. S-13-1014.

1. **Declaratory Judgments: Appeal and Error.** When a declaratory judgment action presents a question of law, an appellate court decides the question independently of the conclusion reached by the trial court.
2. **Contracts: Appeal and Error.** The interpretation of a contract is a question of law, in connection with which an appellate court has an obligation to reach its conclusions independently of the determinations made by the court below.